UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    KING PAR, LLC,                          Case No. 16-31984
                                                   Chapter 7
                  Debtor.                            Hon. Daniel S. Opperman

_____/

## OPINION REGARDING CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM NUMBER 5 OF CLAIMANT WERRE & BETZEN SALES, INC.

### FACTUAL BACKGROUND

This Chapter 7 case was filed as an involuntary Chapter 7 case on August 25, 2016. Werre & Betzen Sales, Inc. filed a priority wage claim, Proof of Claim Number 5, in the amount of $11,323.78 for unpaid commissions earned, claiming priority under 11 U.S.C. § 507(a)(4)(B). The Chapter 7 Trustee, Samuel Sweet, objects to the Werre & Betzen Claim, asserting that it lacks substantiation and fails to attach documentation to support: the requisite sales relationship between Debtor and Werre & Betzen during the applicable time period, totaling at least 75% of the total commissions earned; whether the commissions earned were attributable to the Debtor; and whether such funds were earned during the required 180-day pre-petition period.

Specifically, the Chapter 7 Trustee points to Werre & Betzen's 2015 and 2016 federal corporate income tax returns for the fiscal periods ending on June 30, 2016 and June 30, 2017, showing total sales of $66,970.00 and $52,754.00, respectively. For the one-year period ending September 2016, Werre & Betzen's commission records show commission deposits of $51,885.51, of which only $4,121.90 is attributable to the Debtor. Adding in the $11,323.78 of

1

uncollected commissions due from the Debtor, the total would be $15,445.68, which is only 24.4% of the commissions earned. In support, the Trustee attached Werre & Betzen records detailing deposits received from September 2015 to September 2016 from all five of its vendors — Naples Bay Golf, P&W Golf Supply, The Weather Company, St. Andrews, and the Debtor. A handwritten summary of the total commission earned, and the earnings attributed to King Par is included on each month's deposits:

|  | Commission | King Par Earnings |
|---|---|---|
| 09/25/15 | $ 4,614.21 | $1,552.74 |
| 11/09/15 | $ 3,431.57 | $ 280.05 |
| 01/22/16 | $ 1,638.42 | $ 43.11 |
| 01/26/16 | $ 3,369.54 | $ 0 |
| 04/01/16 | $ 3,839.16 | $2,246.00 |
| 04/18/16 | $ 361.50 | $ 0 |
| 04/27/16 | $ 2,855.33 | $ 0 |
| 06/09/16 | $ 847.79 | $ 0 |
| 07/01/16 | $21,858.83 | $ 0 |
| 07/21/16 | $ 3,677.41 | $ 0 |
| 09/24/16 | $ 5,391.75 | $ 0 |
|  | $51,885.51 | $4,121.90 |

Werre & Betzen asserts that the commissions earned totaled over 100%, because its net income during the relevant time was zero after deductions for cost of goods sold and other expenses. The Trustee disputes Werre & Betzen's interpretation that the amount "earned" under Section 507(a)(4)(B) should be considered to be zero, because the amount "earned" clearly is intended to mean the gross amount earned under general rules of statutory construction and principals. The Trustee also argues that Werre & Betzen has not shown that the subject commissions were all earned between February 26, 2016 and August 25, 2016, which is the requisite 180-day period prior to the August 25, 2016 filing date.

  Werre & Betzen responds, attaching further documentation to support its claim as a Section 507(a)(4)(B) priority claim. Claimant specifically asserts that more that 75% of its net

2

income during the pre-petition period January 1, 2016 to August 2016 was from the Debtor, for a total priority commission claim of $11,323.78.

On November 21, 2018, the parties agreed that an evidentiary hearing was not necessary but that each should be allowed to submit additional proofs and arguments. Accordingly, the Court issued an Order Establishing Deadlines to File Briefs. Only Werre & Betzen filed a post-hearing brief, asking this Court to liberally construe the language of Section 507(a)(4)(B), and determine that the 75% calculation should be based upon its net, versus ordinary or gross income, which will result in it meeting the test for priority status. The Trustee chose to rely upon his Objection and Reply Brief.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

## LAW

Section 507(a)(4)(B)

Section 507(a)(4)(B) states:

> (a) The following expenses and claims have priority in the following order:
>
> ****
>
> (4) Fourth, allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of cessation of the debtor's business, whichever occurs first, for—
>
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the

>     ordinary course of the debtor's business if, and only if, during the
>     12 months preceding that date, at least 75 percent of the amount
>     that the individual or corporation earned by acting as an
>     independent contractor in the sale of goods or services was earned
>     from the debtor.

11 U.S.C. § 507(a)(4)(B).

Federal Rule of Bankruptcy Procedure 3001(f) states that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. The burden is upon the party objecting to the claim to introduce evidence by a preponderance sufficient to rebut the presumption of validity. *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696 (5th Cir. 1988). Once the objecting party produces evidence to refute at least one of the allegations essential to the legal sufficiency of the claim, the burden of persuasion shifts back to the claimant. *In re Hughes*, 313 B.R. 205 (Bankr. E.D. Mich. 2004).

## ANALYSIS

The parties are in agreement that, during the relevant time, Werre & Betzen was a corporation with only one employee, acting as an independent contractor in the ordinary course of the Debtor's business. Thus, the remaining analysis of this claim under Section 507(a)(4)(B) is a matter of math. The Court has examined the pleadings and the claim filed by Werre & Betzen. The only verified commissions earned were in an email dated June 15, 2016 from Robert Werre to Dan Straka, retail manager for the Debtor, as well as commission deposit records of Werre & Betzen. That email included a chart in which the columns do not align, which appear to list $1,807.20 in total commissions earned "thru Feb. 29." The chart also appears to list additional commissions for the time period March through April 2016. However, the Court cannot verify this from the obscure chart attached to the email. Upon examination of the "Deposit Summary" pages attached as Exhibit C to the Trustee's Reply Brief, the

4

commissions earned during the 12-month pre-petition period by Werre & Betzen from Debtor total $4,121.90. No other commissions through the petition filing date of August 25, 2016 are stated in this email or broken down or described in any other pleadings filed with the Court. Thus, the Court agrees with the Trustee's calculation that, for the 12-month pre-petition period, such results in 24.4% of the total commissions earned, adding the $11,323.78 of uncollected commissions due from the Debtor, based the total commission deposits of $51,885.51.

Werre & Betzen takes issue with the calculation being based upon the $51,885.51[1] as the amount "earned" by it "by acting as an independent contractor in the sale of goods or services." Urging this Court to apply a "liberal interpretation" to the phrase "the amount that the individual or corporation earned," Werre & Betzen argues that the amount "earned" should instead be the net earnings after deducting costs of goods sold, expenses, etc. Based upon its Profit and Loss Statement for the time period August 25, 2015 through August 25, 2016, the net income is a negative $12,978.39.

In construing a statute, the Court looks to the plain meaning of the statute, and only looks beyond such if the language is ambiguous or if a literal application of the statute will produce a result "demonstrably at odds with" the drafters' intentions. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989). The word "earned" is not ambiguous and is commonly understood. To "earn" is "[t]o acquire by labor service, or performance." Black's Law Dictionary (10th ed. 2014). Thus, Werre & Betzen "earned" the commissions when it acquired such. Any reductions for costs of goods sold and other expenses does not negate the amount "earned." Following the logic proposed by Werre & Betzen, utilizing net income, the commissions would have to

---

[1] Werre & Betzen's Profit and Loss Statement states a total income of $51,537.96, while the total income from the Deposit Summary Reports show a total income of $51,885.51. For purposes of this Opinion, the Court concludes the $347.55 difference is negligible, and will rely upon the more detailed Deposit Summary Reports.

5

correspondingly be reduced by cost of goods sold and expenses related to each particular commission earned. To conclude otherwise, would result in a one-sided accounting, with the claimant always meeting the 75% test. The weakness of Werre & Betzen's argument is demonstrated by considering the other four vendors it represented in 2015-2016. These vendors generated $47,763.61 in commissions or 92% of the actual money received by Werre & Betzen ($47,763.61 ÷ $51,885.51) or 76% if credit is given to the earned but unpaid commissions of $11,323.78. The existence of these other vendors who supplied the majority of the income of Werre & Betzen shows that it was not so dependent on the Debtor as Section 507 requires. Instead, what happened is that a key vendor of Werre & Betzen — the Debtor — failed but Werre & Betzen still had other vendors to represent. This is not the case of a captive representative that lost its main vendor or client.

Moreover, the Court cannot draw a line as to where to conclude the source of net income should be allocated. By way of example, was the Debtor's line of goods so profitable that the other four vendors were the sole sources of expense? The Court doubts that is the case. To read the statute as urged by Werre & Betzen, each of the other four vendors likewise would meet the 75% standard of Section 507, a result that is counter to the words and spirit of that statute. If the Court were to look past the plain meaning of the word "earned," the reading proposed by Werre & Betzen is clearly not what Congress intended with the wording of Section 507(a)(4)(B).

## CONCLUSION

For the above-stated reasons and subject to amendment of Werre & Betzen's proof of claim, the Court determines that the Trustee has sufficiently rebutted the presumption of the validity of the claim of Werre & Betzen. This claim is not entitled to priority status because the requirements of Section 507(a)(4)(B) have not been met. The Court directs the Chapter 7

6

16-31984-dof    Doc 267    Filed 03/07/19    Entered 03/07/19 13:55:29    Page 6 of 7

Trustee, through counsel, to submit an order consistent with this Opinion and the entry of order procedures of this Court.

**Not for Publication**

**Signed on March 07, 2019**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge